**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

RODNEY KEITH JAMES,

                Plaintiff,

      v.                                                            No. 9:13-CV-526
                                                                        (DNH/CFH)

RICHARD KASKIW, et al.,

                Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

Rodney Keith James
Plaintiff Pro Se
C-46388
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

Hon. Eric T. Schneiderman              TIMOTHY P. MULVEY, ESQ.
Attorney General for the                 Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Rodney Keith James, a patient who was, at all relevant times, an involuntary patient under civil confinement at the Central New York Psychiatric Center ("CNYPC"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, James

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

Morgan,[2] Richard Kaskiw, Candace Wilber, and Elizabeth Farnum, violated his constitutional rights under the Fourteenth Amendment. Dkt. Nos. 1, 5. Plaintiff commenced this action on May 7, 2013, seeking $1,000,000 in damages from defendants Morgan, Kaskiw, and Wilber. Dkt. No. 1 ("Compl.") at 8. On August 8, 2013, plaintiff filed an amended complaint, adding Farnum as a defendant to this action. Dkt. No. 5 ("Am. Compl.") at 1. On April 1, 2014, defendants Kaskiw, Wilber, and Farnum filed a motion to dismiss the amended complaint on the ground that the complaint failed to state a claim upon which relief may be granted. Dkt. No. 12 at 1. On July 9, 2014, the Court denied defendants' motion to dismiss in its entirety. Dkt. No. 20. Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ( "Fed. R. Civ. P.") 56(a). Dkt. No. 31. Plaintiff filed a response. Dkt. No. 36. For the following reasons it is recommended that defendants' motion for summary judgment be granted.

### I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra.

### A. Plaintiff's Complaint

On October 2, 2012, Morgan placed plaintiff on a bathroom restriction[3] "without reason." Am. Compl. at 1. Plaintiff alleges that he was placed on a bathroom restriction

---

[2] Defendant James Morgan was dismissed from this action by District Judge Hurd's Decision and Order, entered March 4, 2014. Dkt. No. 6 at 9.

[3] The Court infers from plaintiff's complaint that a bathroom restriction is a measure that prevents a restricted patient from using the bathroom facilities in the company of other patients. Am. Compl. at 1-3.

because Morgan believed that plaintiff had engaged in sexual conduct with another patient. Id. Plaintiff further alleges that he is "experiencing verbal threats and harassment by peers [and] staff[,]" but does not identify any individuals. Id. at 2.

Plaintiff alleges that defendant Farnum told him that he would "see the doctor every three months only if [he was] really laying down on the ground bleeding to death." Am. Compl. at 2. Plaintiff required medical treatment for pain and swelling of his bladder, and recurring urinary tract infections which are caused by kidney stones. Compl. at 8. Additionally, plaintiff sought medical assistance because he had pain in his urethra and was urinating cloudy, strong-smelling urine. Id. Plaintiff feels pains from his stomach, pancreas, and liver, and suffers from frequent shivering and muscle aches. Id. However, plaintiff states the only treatment he received from defendant Wilber was medication for his diarrhea issue. Am. Compl. at 2.

### B. Plaintiff's Medical Records

Defendants filed, as an exhibit to their motion for summary judgment, plaintiff's complete medical record maintained ay CNYPC for the period of September 19, 2011 through October 22, 2013, which contains 1254 pages of medical information. Dkt. No. 30.[4] To the extent that this exhibit contains medical records pertinent to the medical needs discussed in plaintiff's complaint, the Court has endeavored to summarize the applicable notes below.

Plaintiff initially arrived at CNYPC in May 2011. Dkt. No. 30 at 8. After leaving

---

[4] All page numbers referred to by Dkt. No. 30 and its corresponding attachments are references to the Bates System number at the bottom-center of plaintiff's medical records.

-3-

CNYPC in September 2011 to attend his trial, plaintiff returned to CNYPC sometime in May 2012. Id.

On April 2, 2012, plaintiff received a CT scan at Bellevue Hospital in New York City after complaining about right flank pain. Dkt. No. 30 at 91. The CT scan revealed a "nonobstructing stone." Id. Diagnostic imaging performed on August 10 and 20, 2012 revealed possible non-obstructing kidney stones. Id. at 104-05. Defendants Wilbur and Farnum were notified about these results. Id.

On August 21, 2012, plaintiff requested a consultation regarding his chronic renal stones. Dkt. No. 30 at 106. Kaskiw ordered a CT scan on August 23, 2012. Id. at 109. The CT scan was scheduled for September 7, 2012, but plaintiff refused to participate in the CT scan preparation or attend his appointment for the scan. Dkt. No. 30-1 at 497. Plaintiff then reported difficulty urinating, and the presence of blood in his urine, on September 9, 11, and 15, 2012. Id. at 522, 525, 543, 549.

Plaintiff was taken to SUNY Urology on September 25, 2012. Dkt. No. 30 at 83. On September 27, 2012, defendant Wilber signed off on a consultant's recommendations that plaintiff receive a CT scan, and a urine cytology and culture. Id. at 107. Plaintiff received a CT scan on October 11, 2012, and Kaskiw received the results of the scan. Id. at 119-20.

Plaintiff was seen again at SUNY Urology on October 31, 2012, and prescribed Levoquine. Dkt. No. 30 at 122. The October 31, 2012 consultation note also states that plaintiff needed a cytoscopy. Plaintiff was seen at SUNY Urology again on December 3, 2012, and that consultation notes the results of a cytoscopy. Id. at 125. Wilber signed off on the treatment plan, which included prescribing Bactrim and anti-inflammatories, along with a one-month follow-up visit. Id.

Kaskiw ordered and reviewed a urinalysis on December 27, 2012. Dkt. No. 30-4 at 910. Plaintiff had an appointment at SUNY Urology again on January 24, 2013, where a CT scan revealed no obstruction in his abdomen or pelvis. Dkt. No. 30 at 139. Wilber reviewed this consultation note. Id.

On February 14, 2013, plaintiff demanded to have his blood drawn during a clinic visit. Dkt. No. 30-4 at 980. Wilber and Kaskiw attempted to explain to plaintiff the results of his recent testing regarding his urinary issues, but plaintiff interrupted Kaskiw and left the appointment before Wilber and Kaskiw could complete a full examination. Id.

On March 2, 2013, plaintiff continued to complain about pain but denied any bowel or bladder issues. Dkt. No. 30-4 at 1011. On March 15, 2013, plaintiff had another follow-up visit at SUNY Urology, where the consultant noted that plaintiff suffered from persistent hematuria. Dkt. No. 30 at 152. The consultant also noted that plaintiff's CT and cytology results were negative, but suggested a nephrology consultation. Id.

During a clinic visit on April 26, 2013, plaintiff demanded to receive testing that was recommended by the consulting urologist. Dkt. No. 30-3 at 672. Medical staff informed plaintiff that no further tests were necessary at the time because his condition was at its "baseline." Id. On May 2, 2013, medical staff performed a blood draw and collected urine from plaintiff for analysis. Id. at 680.

Plaintiff's annual physical note on May 16, 2013 contains a lengthy history of plaintiff's urinary issues, authored by defendant Wilber. Dkt. No. 30 at 190. In the note, Wilber explains the "numerous" tests and consultations plaintiff received regarding his urinary symptoms. Id. Wilber also notes that, at plaintiff's last urology consultation, his urology work-up was negative. Id. Therefore, the urology consultant stated that he did not

-5-

need to return for a follow-up, but suggested he be seen by a nephrology consultant. Id. However, Wilber noted that, because plaintiff had no recent complaints and his urinalysis appeared stable, further consultations were on hold. Id. Plaintiff continued to report the presence of blood in his urine and stool in August 2013. Id. at 198, 200, 234.

## II. Discussion[5]

Plaintiff contends that his Fourteenth Amendment rights were violated when defendants acted with deliberate indifference toward his serious medical conditions. Dkt. No. 5 at 2. Defendants argue that plaintiff fails to support his claim of deliberate indifference with facts. Dkt. No. 31-4 at 4.

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden to show the absence of disputed material facts by "citing to particular parts of materials in the record [.]" FED. R. CIV. P. 56 (c)(1); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court will resolve ambiguities and draw reasonable inferences in favor of the non-moving party. Thermidor v. Beth Israel Med. Ctr., 683 F. Supp. 403, 405 (2d Cir. 1988).

---

[5] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Assertions by the non-moving party must be supported by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. A motion for summary judgment should not be granted where the "evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party." Richardson v. Coughlin, 763 F. Supp. 1228, 1234 (S.D.N.Y. 1991).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally, . . . and that such submissions must be read to raise the strongest arguments that they "suggest" . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest" . . . that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally." (citations omitted)).

### B. Fourteenth Amendment

Involuntarily committed individuals enjoy "postcommitment interests cognizable as liberty interests under the Due Process Clause of the Fourteenth Amendment[.]" Youngberg v. Romeo, 457 U.S. 307, 324 (1982). Under the Fourteenth Amendment, the State must "provide adequate food, shelter, clothing, and medical care." Id. Courts have found that the rights of involuntarily committed individuals are most analogous to the rights afforded to pretrial detainees. See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009); see also Buthy v. Comm'r of Office of Mental Health of N.Y. State, 818 F.2d 1046, 1051 (2d Cir. 1987) (analyzing the interests articulated in Youngberg).

An involuntarily detained psychiatric patient is neither a convicted prisoner nor a pretrial detainee. However, the Northern District of New York has analyzed medical care claims brought by civilly committed individuals at CNYPC under the same standard applied to deliberate indifference claims brought by convicted prisoners and pretrial detainees.[6] See Ahlers v. Kaskiw, No. 9:12-CV-501 (GLS/ATB), 2014 WL 4184752, at *5 (N.D.N.Y. Aug. 21, 2014) (collecting cases). Therefore, the standard to be applied to a medical care claim brought by an involuntarily detained psychiatric patient at CNYPC is the same standard employed when analyzing a deliberate indifference claim brought under the Eighth Amendment. See id.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

---

[6] The Court notes that neither the Second Circuit, nor the Supreme Court have yet ruled on whether the standard applied to medical care claims brought by civilly committed persons would be different than the standard applied to convicted prisoners or pretrial detainees. Some judges in this District have noted that the applicable standard may differ. See, e.g., Groves v. New York, No. 9:09-CV-0412 (GLS/DEP), 2010 WL 1257858, at *6-7 (N.D.N.Y. Mar. 1, 2010) (stating that some courts have held "that the due process rights of persons in nonpunitive detention are greater than the Eighth Amendment protections afforded to convicted prisoners.") (quoting Haitian Ctrs. Council, Inc. v. Sale, 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993)) (additional citation omitted).

punishment." U.S. CONST. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quoting Helling v. McKinney, 509 U.S. 25 (1993)); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). The Eighth Amendment obligates prison officials to provide necessary medical care to prisoners. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). To state a cognizable claim against prison officials for deliberate indifference to a substantial risk of serious injury, a prisoner must first show the presence of a "serious illness or injury." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk of harm and failing to take measures to avoid the harm. Farmer, 511 U.S. at 834.

A serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Thus, prison officials must be "intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed." Gamble, 429 U.S. at 104. "[M]ere disagreement over the proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Therefore, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Here, plaintiff has alleged that he suffers from a urinary tract infection and kidney stones, and that he experiences pain and swelling in his bladder and stomach. Am. Compl. at 2. It appears that defendants do not dispute that plaintiff's condition constitutes a serious medical need, as their arguments pertain solely to the subjective prong of the deliberate indifference analysis. See Dkt. No. 31-4 at 3-4. Although, the Court notes that kidney stones alone may satisfy the objective prong of the analysis if they cause "severe pain." Espinal v. Goord, No. 00 CIV. 2242 (AJP), 2001 WL 476070, at *14 (S.D.N.Y. May 7, 2001).

Turning to the objective prong of the deliberate indifference analysis, plaintiff must "prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. Officials are liable for deliberate indifference when they "intentionally deny [] or delay [] access to medical care or intentionally interfere [] with the treatment once prescribed." Estelle, 429 U.S. at 104.

Here, plaintiff alleges that defendants Kaskiw and Wilber didn't "show [] remorse or empathy" for his medical issues. Am. Compl. at 2. He further alleges that Wilber "was very

-10-

hostile" toward him. Id. Defendant Farnum allegedly told plaintiff that he would only be allowed to see a doctor every three months, unless he was "laying down on the ground bleeding to death." Id. Defendants deny plaintiff's allegations as "categorically untrue." Affirmation of Dr. Richard Kaskiw ("Kaskiw Aff.") ¶ 2. Dr. Kaskiw states that plaintiff received "regular and appropriate care at all times in question." Id.

Contrary to plaintiff's claim that the medical staff at CNYPC did not provide adequate medical care, plaintiff's medical records are replete with instances of the medical staff tending to his complaints. See section I.B supra. Although plaintiff describes the treatment that he received from Kaskiw and Wilber as lacking empathy and their attitude toward him as hostile, the record shows that Kaskiw and Wilber were very attentive to plaintiff's medical needs, performing multiple tests and sending plaintiff to urology consultations. See Dkt. No. 30 at 104-05, 107, 109, 125, 190; Dkt. No. 30-4 at 910, 980. It is well established that "disagreements over . . . forms of treatment . . . are not adequate grounds for a Section 1983 claim." Sonds, 151 F. Supp. 2d at 312. Further, to the extent that plaintiff disagrees with defendants' medical decisions, and makes conclusory allegations of their deliberate indifference, such allegations cannot negate plaintiff's extensive medical record which shows defendants' continuing care of his urinary issues. See Wright v. Genovese, 694 F. Supp. 2d 137, 156-57 (N.D.N.Y. 2010) ("Plaintiff's . . . conclusory allegations of deliberate indifference do not negate the extensive evidence that [the doctor] and others reasonably and diligently addressed plaintiff's medical needs over an extended period of time."); Williamson v. Goord, No. 9:02-CV-00521 (GLS/GHL), 2006 WL 1977438, at *21 (N.D.N.Y. July 11, 2006) (recommending dismissal where the defendants "promptly and dutifully" provided care and requested necessary testing).

Plaintiff's medical record also shows interactions with Wilber in which plaintiff requests to receive treatment recommended by outside consultants. Dkt. No. 30 at 190. However, "a difference of opinion between an inmate and medical professionals, or even among medical professionals themselves, as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference." Williams v. M.C.C. Institution, No. 97 CIV. 5352 (LAP), 1999 WL 179604, at *7 (S.D.N.Y. Mar. 31, 1999). Here, Wilber explained to plaintiff that his test results did not necessitate further treatment, and that, as he had not complained recently about urinary issues, further treatment was "on hold." Dkt. No. 30 at 90. Contrary to plaintiff's assertions, the record shows that Wilber considered the treatment suggested by the urology specialist, and weighed plaintiff's treatment options while considering the results reported by the specialist. Such treatment does not amount to deliberate indifference. See Williams, 1999 WL 179604, at *7.

As to defendant Farnum, plaintiff's medical records do not contain any note in which Farnum, a psychiatrist, examined him regarding his urinary medical issues, aside from a note which states that Farnum received the results of plaintiff's renal ultrasound performed on August 20, 2012. Dkt. No. 30 at 105. As such, no rational finder of fact could conclude that Farnum was deliberately indifferent to plaintiff's serious medical need, as it relates to his urinary issues. See Lloyd v. Lee, 570 F. Supp. 2d 556, 569-70 (S.D.N.Y. 2008) (dismissing complaint where the defendant doctor examined the plaintiff only twice).

The Court further notes that plaintiff has a history of non-compliance with treatment, as evidenced in his medical records. On September 27, 2012, plaintiff refused to prepare for or attend a scheduled CT scan. Dkt. No. 30 at 107. On February 14, 2013, Kaskiw and Wilber tried explaining to plaintiff the results of his recent testing for his urinary ailments, but

-12-

plaintiff demanded to receive blood work, and then left the appointment before a full examination could be conducted. Dkt. No. 30-4 at 980. This non-compliance undermines his conclusory claims of deliberate indifference. See Wright, 694 F. Supp. 2d at 157 (citing Jones v. Smith, 784 F.2d 149, 151-52 (2d Cir. 1986)).

Accordingly, it is recommended that defendants' motion for summary judgment on this ground be granted.[7]

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 31) on plaintiff's amended complaint (Dkt. No. 5) be **GRANTED** in all respects as to all claims and defendants; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

---

[7] Plaintiff states, in his response to defendants' summary judgment motion, that Farnum, Kaskiw, and Wilber are denying him medical treatment in retaliation for his filing a complaint against them. Dkt. No. 36 at 1. "[T]he Court notes that opposition papers are not the proper vehicle to instill new causes of action. . . ." Gee v. Fischer, No. 9:09-CV-1057 (MAD/RFT), 2011 WL 4965297, at *8 (N.D.N.Y. Sept. 21, 2011). To allow plaintiff to effectively amend his complaint at this late stage in the proceeding, particularly after the period for discovery has closed, would prejudice the defendants. Id.; Jackson v. Onondaga Cty., 549 F. Supp. 2d 204, 220 (N.D.N.Y. 2008). As plaintiff's opposition papers are not the proper vehicle to assert new claims against defendants, he is directed to the proper procedural mechanisms set forth in the Federal Rules of Civil Procedure and the Local Rules of Practice for the Northern District of New York. Brown v. Raimondo, No. 9:06-CV-773 (GTS/RFT), 2009 WL 799970, at *2 n.2 (N.D.N.Y. Feb. 25, 2009).

**APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

DATED: January 28, 2016
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge